UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

|  |  |
|---|---|
| DWIGHT D. GILBERT, | ) CV 13-02347-SH |
| Plaintiff, | ) MEMORANDUM DECISION |
|  | ) AND ORDER |
| v. | ) |
| CAROLYN W. COLVIN, Commissioner, Social Security Administration, | ) |
| Defendant. | ) |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying plaintiff's application for Disability Insurance Benefits and Supplemental Security Income. Pursuant to 28 U.S.C. § 636(c), the parties have consented that the case may be handled by the undersigned. The action arises under 42 U.S.C. § 405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The parties have filed their pleadings. The plaintiff has also filed a Brief in Support

1

of the Complaint, and the defendant has filed a Memorandum in Support of Motion for Summary Judgment as well as the certified Administrative Record. After reviewing the matter, the Court concludes that the decision of the Commissioner should be reversed and remanded.

## I. BACKGROUND

The plaintiff Dwight D. Gilbert filed applications for Disability Insurance Benefits and Supplemental Security Income payments under Title II and XVI of the Social Security Act. In his applications, Gilbert alleged an inability to work since March 7, 2004. (See Administrative Record ["AR"] 132-37). The Commissioner initially denied his applications. (See AR 83-94). A hearing on the claim was conducted on June 10, 2011. (See AR 35-61). On August 2, 2011, the Administrative Law Judge ("ALJ") issued an unfavorable decision finding that Gilbert was not disabled. (See AR 21-34). Upon Gilbert's request, the Appeals Council reviewed the ALJ's decision. (See AR 4-7). The Appeals Council affirmed and adopted the findings and conclusions of the ALJ regarding whether Gilbert was disabled. (See AR 4-7).

Plaintiff makes one challenge to the ALJ's Decision. He solely alleges the ALJ erred by failing to properly consider his testimony.

## II. DISCUSSION

Social Security Ruling ("SSR") 96-7p states in relevant part:

> "The regulations describe a two-step process for evaluating symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness:
>
> * First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s) … that could reasonably be expected to produce the individual's pain or other

symptoms.

* Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. This includes the medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record."

The ALJ found that the Plaintiff's medically determinable impairments[1] could reasonably be expected to cause the alleged symptoms, but that plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent they were inconsistent with the residual functional capacity assessment in the decision. (See AR 28).

In his credibility analysis, among other evidence, the ALJ relied on evidence of purported non-compliance with prescribed treatment as a basis to question the

---

[1] (a) degenerative disc disease at C5-C6; (b) facet arthrosis at L5-S1 with retrolisthesis of L4 on L5; and (c) obesity. (See AR 26).

3

Plaintiff's credibility. For example, the ALJ found that (1) the Plaintiff had been instructed to follow a low fat diet and to exercise in order to lose weight; (2) however, contrary to doctor's instructions, Plaintiff had gained more weight without reasonable explanation; and (3) the Plaintiff acknowledged that his current diet and exercise was not what it needed to be to decrease his weight to a lower level. Additionally, the ALJ made the following findings: (1) the Plaintiff was diagnosed with chronic low back pain and obesity; (2) he had a body mass index score greater than 33; (3) he had gained over 80 pounds in the last few years; and (4) notwithstanding the weight gain and the body mass index, there were no opinions that reflected any functional limitations due to the condition. (See AR 28).

Additionally, SSR 02-1p states in relevant part:

> "14. How Do We Evaluate Failure To Follow Prescribed Treatment in Obesity Cases?
>
> Before failure to follow prescribed treatment for obesity can become an issue in a case, we must first find that the individual is disabled because of obesity or a combination of obesity and another impairment(s). Our regulations at 20 CFR 404.1530 and 416.930 provide that, in order to get benefits, an individual must follow treatment prescribed by his or her physician if the treatment can restore the ability to work, unless the individual has an acceptable reason for failing to follow the prescribed treatment. We will rarely use 'failure to follow prescribed treatment' for obesity to deny or cease benefits.
>
> SSR 82-59, 'Titles II and XVI: Failure To Follow Prescribed Treatment,' explains that we will find failure to follow prescribed treatment only when all of the following conditions exist:
>
> \* The individual has an impairment(s) that meets the definition of disability, including the duration requirement, and
>
> \* A treating source has prescribed treatment that is clearly expected to restore the ability to engage in substantial gainful activity, and
>
> \* The evidence shows that the individual has failed to follow prescribed treatment without a good reason.
> …
> The treatment must be prescribed by a treating source, as defined in our regulations at 20 CFR 404.1502 and 416.902, not simply recommended. A treating source's statement that an individual "should" lose weight or has "been advised" to get more exercise is not prescribed treatment.

> When a treating source has prescribed treatment for obesity, the treatment must clearly be expected to improve the impairment to the extent that the person will not be disabled. The goals of treatment for obesity are generally modest, and treatment is often ineffective. Therefore, we will not find failure to follow prescribed treatment unless there is clear evidence that treatment would be successful. The obesity must be expected to improve to the point at which the individual would not meet our definition of disability, considering not only the obesity, but any other impairment(s).
>
> Finally, even if we find that a treating source has prescribed treatment for obesity, that the treatment is clearly expected to restore the ability to engage in SGA, and that the individual is not following the prescribed treatment, we must still consider whether the individual has a good reason for doing so. In making this finding, we will follow the guidance in our regulations and SSR 82-59, which provide that acceptable justifications for failing to follow prescribed treatment include, but are not limited to, the following:
>
> * The specific medical treatment is contrary to the teaching and tenets of the individual's religion.
>
> * The individual is unable to afford prescribed treatment that he or she is willing to accept, but for which free community resources are unavailable.
>
> * The treatment carries a high degree of risk because of the enormity or unusual nature of the procedure."

The record reveals no concrete "prescribed treatment" for the Plaintiff's obesity as required by SSR 02-1p. During each visit with the treating doctor, it appears that the Plaintiff was given mere suggestions to exercise more, change diet and lose weight, rather than being prescribed a treatment. (See, e.g., AR 191, 198, 199). Furthermore, the record lacks support of any certainty whether the treatment suggestions regarding obesity would be "clearly expected to restore [Plaintiff's] ability to engage in substantial gainful activity." Lastly, even if it was established that there was a prescribed treatment for the Plaintiff's obesity and the Plaintiff did not follow it, the ALJ was required to consider whether the Plaintiff had a good reason for doing so. The Plaintiff testified that he was not able to exercise because of pain (AR 48-49), and that he tried to follow the doctor's advice to lose weight by

walking 30 minutes a day but could not do it without being in really bad pain (AR 46-47). However, the ALJ made no mention of that testimony.

The Ninth Circuit has held that where there is evidence of obesity, the ALJ must determine the effect of the plaintiff's obesity upon his other impairments, ability to work, and general health. Celaya v. Halter, 332 F.3d 1177, 1182 (9th Cir 2003); See also SSR 02-1p (requiring an ALJ to consider effects of obesity in all steps of the 5-step sequential evaluation); See also Burch v. Barnhart, 400 F.3d 676, 681-82 (9th Cir. 2005) (distinguishing Celaya and noting that the ALJ must only consider obesity when the record demonstrates that obesity exacerbates other impairments).

The ALJ made no specific findings about the effect the Plaintiff's obesity had upon his ability to work and his general health. In his decision, the ALJ said: "Notwithstanding the weight gain and a body mass index score greater than 30, there are no opinions that reflect functional limitations due to [obesity]." (See AR 26).

However, there is certainly evidence in the record that the Plaintiff's obesity affected other impairments. For example, the ALJ found that the Plaintiff's "obesity exacerbates his low back pain." The Plaintiff also testified that he tried to follow the doctor's advice to lose weight by walking 30 minutes a day but could not do it without being in serious pain. (See AR 46-47). Therefore, the record shows that obesity had effects on other impairments of the Plaintiff, however, the ALJ failed to make specific findings as to its effects on the Plaintiff's ability to work and his general health.

In light of SSR 02-1p, SSR 82-59, SSR 96-7p and the Ninth Circuit authority in Celaya and Burch, the ALJ must make specific findings regarding the effects of obesity on the Plaintiff's other impairments, his general health and ability to work

and then use those findings in assessing the Plaintiff's credibility. The court, therefore, reverses the ALJ's decision and remands with direction to the ALJ to make the proper findings regarding obesity consistent with this decision.

## ORDER

For the foregoing reasons, the decision of the Commissioner is reversed, and the matter is remanded for further proceedings in accordance with this decision, pursuant to Sentence 4 of 42 U.S.C. § 405(g).

DATED: February 6, 2014

_____
STEPHEN J. HILLMAN
UNITED STATES MAGISTRATE JUDGE